IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DOUGLAS ANDREW STEEN,

               Plaintiff,

    v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

               Defendant.

Case No. 3:13-cv-01421-MA

OPINION AND ORDER

SARA L. GABIN
14523 Westlake Drive
Lake Oswego, OR 97035-8651

    Attorney for Plaintiff

S. AMANDA MARSHALL
United States Attorney
District of Oregon
ADRIAN L. BROWN
RON SILVER
Assistant United States Attorneys
1000 S.W. Third Ave., Suite 600
Portland, OR 97204-2902

NANCY A. MISHALANIE
Social Security Administration
Office of the General Counsel
701 Fifth Ave., Suite 2900, M/S 901
Seattle, WA 98104-7075

    Attorneys for Defendant

1 - OPINION AND ORDER

MARSH, Judge

Plaintiff Douglas Andrew Steen seeks judicial review of the final decision of the Commissioner of Social Security denying his application for Supplemental Security Income (SSI) disability benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f.  This Court has jurisdiction pursuant to 42 U.S.C. § 1383(c)(3).  For the reasons that follow, I affirm the final decision of the Commissioner.

### PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff protectively filed an application for SSI on April 27, 2009, alleging disability beginning April 27, 2009, due to memory problems, depression, anxiety, post-traumatic stress disorder, degenerative disc disease of the neck and back, hearing loss, numbness in both legs, and sleep apnea.

Plaintiff's claims were denied initially and upon reconsideration.  Plaintiff filed a request for a hearing before an administrative law judge (ALJ).  An ALJ held a hearing on April 19, 2012, at which plaintiff appeared with his attorney and testified. A vocational expert, Richard M. Hincks also appeared at the April 19, 2012 hearing and testified.  On May 21, 2012, the ALJ issued an unfavorable decision.   The Appeals Council denied plaintiff's request for review, and therefore, the ALJ's decision became the final decision of the Commissioner for purposes of review.

Born in 1968, plaintiff was 44 years old on the date his application was filed. Plaintiff completed school through the eleventh grade, and has failed several attempts to earn a GED. Plaintiff was in special education classes in school, and does not read and write proficiently. After high school, plaintiff served eight months in the Army. Plaintiff has past relevant work as a satellite installer.

## THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520; 416.920. Each step is potentially dispositive. The claimant bears the burden of proof at steps one through four. *See Valentine v. Commissioner Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At step five, the burden shifts to the Commissioner to show that the claimant can do other work which exists in the national economy. *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012).

At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since his alleged onset of disability. At step two, the ALJ found that plaintiff had the following severe impairments: personality disorder, antisocial; degenerative disc disease of the lumbar and cervical spine/scoliosis; obesity; substance abuse; and depression. At step three, the ALJ found that

3 - OPINION AND ORDER

plaintiff's impairments, or combination of impairments, did not meet or medically equal a listed impairment.

The ALJ assessed plaintiff with a residual functional capacity (RFC) to perform less than a full range of light work in that plaintiff can lift 20 pounds with his dominant arm and 10 pounds with his non-dominant arm; can sit, stand or walk six hours in an eight hour day; can occasionally rotate his neck; cannot crouch or crawl; cannot drive; cannot work around the public, but can have occasional contact with coworkers; and is limited to simple, repetitive tasks.

At step four, the ALJ found plaintiff is unable to perform any past relevant work. At step five, the ALJ concluded that considering plaintiff's age, education, work experience, and residual functional capacity, jobs exist in significant numbers in the national economy that plaintiff can perform, such as electronics worker, food assembler, and hand packer. Accordingly, the ALJ concluded that plaintiff has not been under a disability under the Social Security Act from April 27, 2009 through the date of the decision.

## ISSUES ON REVIEW

On appeal to this court, plaintiff contends the ALJ committed the following errors: (1) failed to find the diagnoses of delusional disorder, paranoid disorder, and hearing loss severe at Step Two; (2) erroneously discounted plaintiff's testimony; (3)

failed to give controlling weight to the opinions of Nurse Practitioners Valerie Cecil and Marguerite Gareau; (3) erroneously rejected the lay testimony of Dominique Eckhart and Robin Addington; and (4) the RFC fails to include all of plaintiff's limitations.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hill*, 698 F.3d at 1159 (internal quotations omitted); *Valentine*, 574 F.3d at 690. The court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation. *Batson v. Commissioner Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

## DISCUSSION

I.  **Step Two**

Plaintiff argues the ALJ erred by failing to include his paranoid disorder, delusional disorder, and hearing loss as severe impairments at Step Two. "At step two of the five-step sequential inquiry, the Commissioner determines whether the claimant has a medically severe impairment or combination of impairments." *Smolen v. Chater*, 80 F.3d 1273, 1289-90 (9th Cir. 1996). An impairment is "severe" for Step Two purposes if it, in combination with other impairments, "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). *See also Smolen*, 80 F.3d at 1290. A claimant can only establish a medically determinable impairment at Step Two "if the record includes signs – the results of 'medically acceptable clinical diagnostic techniques,' such as tests – as well as symptoms, *i.e.*, [the claimant's] representations regarding his impairment." *Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005).

Ultimately, however, Step Two "is a *de minimis* screening device to dispose of groundless claims," and an impairment or combination of impairments will only be found "not severe" if "the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" *Smolen*, 80 F.3d at 1290 (quoting *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir.

1988)). An error in failing to list a condition at Step Two is harmless if the ALJ considers the limitations posed by the allegedly omitted condition in formulating the RFC. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

Here, the ALJ did not include the diagnoses of paranoid or delusional disorder as severe impairments at Step Two, but did include the diagnosis of antisocial personality disorder and the ALJ analyzed plaintiff's mental limitations extensively, as required, at Step Three, and again when formulating plaintiff's RFC.

To be sure, plaintiff does not now identify any specific *functional limitations* connected with his alleged paranoid and delusional disorders that the ALJ failed to consider when evaluating plaintiff's antisocial personality disorder and mental health limitations in the RFC. Instead, plaintiff primarily complains that the ALJ erred by failing to specifically consider and discuss paranoid and delusional disorder diagnoses because they "show *prima fascia* (sic) disability" and were proffered by Ms. Gareau, a nurse practitioner. *See* Plaintiff's Reply (#20), p. 8. Plaintiff's arguments concerning Ms. Gareau's diagnoses are more properly directed at the ALJ's evaluation of her opinion in the RFC assessment at Step Four, which I address at length below. Thus, even assuming *arguendo* that the ALJ erred by failing to explicitly include plaintiff's paranoid and delusional disorders at Step Two,

the error was harmless because Step Two was resolved in plaintiff's favor and the functional limitations caused by these impairments were considered by the ALJ in the remaining steps of the sequential evaluation. *Id.* Plaintiff has therefore failed to show reversible error in the consideration of his paranoid or delusional disorder at Step Two.

I likewise conclude that the ALJ's determination that plaintiff's alleged hearing loss was nonsevere at Step Two is not reversible error. As the ALJ found, there is no objective testing in the record to verify that plaintiff has 50 percent hearing loss in both hears. *See* 20 C.F.R. § 416.908 (an impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings); *Id.* at § 416.920 (at Step Two, claimant must demonstrate a medically determinable impairment). And, as the ALJ indicated, plaintiff testified at the hearing that when he wears his hearing aids, he can "hear a pin drop." Thus, plaintiff has failed to demonstrate that his hearing loss significantly limits his ability to perform basic work activities. *See* 20 C.F.R. § 416.920(c). Accordingly, I conclude the ALJ permissibly found that plaintiff's hearing loss was not a medically determinable impairment at Step Two.

////

////

////

8 - OPINION AND ORDER

## II.  Plaintiff's Credibility

### A.  Standards

Plaintiff contends that the ALJ improperly rejected his testimony.  To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must perform two stages of analysis.  20 C.F.R. § 416.929.  The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged.  *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).  At the second stage of the credibility analysis, absent affirmative evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms. *Carmickle v. Commissioner Soc. Sec. Admin.*, 533 F.3d 1155, 1166 (9th Cir. 2008); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014); *Tommasetti*, 533 F.3d at 1039. Factors the ALJ may consider when making such credibility determinations include the objective medical evidence, the claimant's treatment history, the claimant's daily activities,

inconsistencies in testimony, effectiveness or adverse side effects of any pain medication, and relevant character evidence. *Ghanim*, 763 F.3d at 1163; *Tommasetti*, 533 F.3d at 1039.

### B.  Plaintiff's Testimony

At the hearing, plaintiff testified that he was last employed full time by Dish Net in 2004. Plaintiff appeared at the hearing wearing a soft cervical collar, which he decided to wear on his own because it helps with his neck pain.  Tr. 47.  Plaintiff stated that he has neck problems, back problems, lost a kidney, has scoloiosis, and is about 110 pounds overweight.  Plaintiff uses a CPAP machine all day to help him breathe.  Tr. 48.  Plaintiff described that he takes Celexa for depression and Latuda for anxiety.  Plaintiff testified that he has hearing loss of 50 percent in both ears, but forgets to wear his hearing aids because he has trouble with ear wax.  Tr. 51.

Plaintiff stated that he stopped working installing satellite dishes because he could no longer perform the job physically. Plaintiff described having difficulty bending, kneeling, and that moving around bothers his back and neck.  Tr. 53.  Plaintiff testified that he could sit for 20 minutes before needing to change position due to pain, and that lying down is the only thing that gives him pain relief.  Plaintiff testified that he can stand for 15 minutes, can lift and carry 10 pounds in his left arm and 15 pounds with his right, and can walk 100 yards three to four times

10 - OPINION AND ORDER

a day.  Tr. 55, 57.  Plaintiff described that he can do household chores for 20 minutes before needing to rest.

Plaintiff testified that two or three year ago, he had trouble getting along with others and experiencing paranoia, but is now on medications, with a good treatment plan, and described that "things have been going really good, doing great" and that he did not "foresee any future problems."  Tr. 56.

In a May 4, 2008 Function Report, plaintiff stated that after taking his dog for a walk, he needs to rest for two to three hours. Tr. 178.  Plaintiff stated that he cannot stand long enough to prepare meals and does not handle stress or changes in routine well.  In a May 2008 Pain and Fatigue Questionnaire, plaintiff stated that he has pain in his back and neck all day, every day, and that the pain makes it difficult to bend, stoop or kneel.  Tr. 183.

In an August 10, 2009 Function Report, plaintiff stated that he was living in his car, and that his back and neck hurt so much that it wakes him three to four times a night.  Plaintiff stated that it is difficult to dress and bathe due to pain.  Tr. 190. Plaintiff described that he has difficulty getting along with family, friends, and neighbors, and prefers to be alone.  Tr. 194. Plaintiff stated he can concentrate for 10 minutes, then loses his patience.  In an August 10, 2009 Pain and Fatigue Questionnaire, plaintiff stated that he has burning, aching, and stabbing pain in

his neck and back that lasts all day and is worse with moving.   In
that report, plaintiff estimated he can be active for 20 to 40
minutes before needing to rest.   Tr. 197.

C.   **The ALJ Provided Clear and Convincing Reasons to Discount Plaintiff's Testimony**

In the decision, the ALJ concluded that plaintiff's testimony
concerning the intensity, persistence and limiting effects of his
limitations is not entirely credible.   The ALJ cited numerous
reasons, when taken together, constitute clear and convincing
reasons to reject plaintiff's testimony.

First, as the ALJ discussed, there were multiple indications
in the record of malingering and symptom magnification concerning
plaintiff's physical and mental impairments.   The ALJ discussed
findings from a comprehensive examination on April 12, 2006, by
Robert E. Schneider, Ph.D.   Tr. 305.   Dr. Schneider opined that
plaintiff's presentation and the objective test results provided
"definitive evidence of misrepresentation and malingering."   Tr.
308.   As the ALJ noted, Dr. Schneider noted it was "impossible to
assess work functions."   Tr. 308.   *See Berry v. Astrue*, 622 F.3d
1228, 1235 (9th Cir. 2010)(upholding negative credibility
assessment where affirmative evidence of malingering present).

Additionally, the ALJ discussed an April 24, 2008
psychodiagnostic evaluation by Ronald D. Duvall, Ph.D., which also
found numerous inconsistencies and exaggerations.   As the ALJ
noted, Dr. Duvall indicated that despite complaining "loudly" of

12 – OPINION AND ORDER

back pain, plaintiff sat comfortably during the entire 90 minute examination.    As the ALJ accurately discussed, Dr. Duvall found plaintiff's perception of being persecuted and mistreated as a "strongly paranoid" element to his personality, along with "self-pity, somatization, and projections of his problems onto others." Tr. 30, 338.    Dr. Duvall also found that plaintiff's complaints of memory loss were unsupported by clinical observations, and that plaintiff made "blatant" inconsistencies when he realized he was "claiming his long-term memory to be defective."    Tr. 339.    Dr. Duvall opined that plaintiff's attention, concentration, and persistence were unaffected by his limitations, and that his ability to engage in appropriate social interactions is limited, but would not exclude the type of employment plaintiff has had previously.    Tr. 340.    The ALJ's unchallenged assessment of Dr. Duvall's opinion is wholly supported by substantial evidence.

The ALJ's finding of symptom magnification is further supported by the ALJ's discussion of an October 8, 2009 psychodiagnostic examination from Daniel L. Scharf, Ph.D.    As the ALJ noted, Dr. Scharf found numerous inconsistencies in plaintiff's examination. For example, Dr. Scharf noted that plaintiff reported having typical back pain of 12 on a 10-point scale, but later reported his pain level at a six.    Tr. 390.    As the ALJ noted, Dr. Scharf found plaintiff's statements about drug and alcohol use vague and evasive, stating that plaintiff indicated drinking would

violate his probation, but later reported drinking beer and going to a party. Tr. 31, 390-91. Dr. Scharf indicted that plaintiff inconsistently reported his symptoms of paranoia, and as the ALJ noted, Dr. Scharf found that plaintiff was not psychotic, but blamed others and deflected responsibility, consistent with an antisocial personality disorder. Tr. 393.

Plaintiff acknowledges that multiple instances of symptom exaggeration and malingering exist, but contends that the court should not consider them because plaintiff's exaggeration and gradiosity are part of his anti-social disorder. I disagree. The multiple instances of malingering and exaggeration from Drs. Schneider, Duvall, and Scharf readily support the ALJ's finding that plaintiff's self-reports are unreliable. Notably, plaintiff does not challenge the ALJ's evaluation of Drs. Schneider, Duvall, and Scharf. Even if I were to agree with plaintiff's characterization of the evidence, the ALJ's interpretation of the evidence is reasonable, is wholly supported by substantial evidence, and therefore must be sustained. *Molina*, 674 F.3d at 1111 (ALJ's findings must be upheld if they are supported by reasonable inferences drawn from the record). I conclude the ALJ has cited a clear and convincing reason to discount plaintiff's testimony.

Second, the ALJ discounted plaintiff's subjective complaints because they are inconsistent with the objective medical evidence.

14 - OPINION AND ORDER

As the ALJ correctly noted, contrary to plaintiff's allegations, physical examinations have revealed mild tenderness, negative straight leg testing, and normal gait, without deformity. And, the ALJ accurately noted that plaintiff was advised to lose weight and exercise, but that plaintiff was resistant to changing his diet, finding plaintiff non-compliant with treatment. Tr. 658, 811, 869. An "'unexplained, or inadequately explained, failure ... to follow a prescribed course of treatment'" is a proper reason to reject a claimant's testimony. *Molina,* 674 F.3d at 1113 (quoting *Tommasetti*, 533 F.3d at 1039); *accord Chaudhry v. Astrue*, 688 F.3d 661, 672 (9th Cir. 2012). Also, plaintiff was encouraged to take his medications for pain management, but plaintiff finds the medications ineffective, and prefers to use medical marijuana for pain control. Tr. 309, 861, 864, 869.

Plaintiff contends that his complaints of chronic back and neck pain, and his moderate to severe degenerative disc disease are supported by MRI findings and other records. Tr. 309-11, 381, 709, 712-13. While I agree with plaintiff that there is objective evidence in the record demonstrating degenerative disc disease, in light of the ALJ's other negative credibility findings, the ALJ reasonably determined plaintiff's back and neck pain is not as disabling as alleged. For example, as discussed above, plaintiff's complaints of intractable back pain were inconsistent with observations of Drs. Duvall and Scharf. And, as the ALJ noted,

there is evidence plaintiff uses medical marijuana for pain control, but was using it "pretty much the whole day." Tr. 425, 549, 609, 755. Furthermore, as the ALJ discussed, despite acknowledging that drinking violates his probation, plaintiff admitted to consuming alcohol and declined drug or alcohol treatment in August of 2010. Tr. 425. Viewing the record as a whole, I conclude that the ALJ reasonably discounted plaintiff's testimony on this basis.

Additionally, as discussed above, the ALJ properly determined that plaintiff's complaints of memory loss were completely undermined by clinical findings and objective testing. In addition to the contrary findings by Drs. Schneider, Duvall and Scharf, the ALJ discussed normal mental status findings with intact memory and concentration during other medical visits. Tr. 283, 310. As the ALJ correctly indicated, plaintiff testified that his mental health has significantly improved on medication. The longitudinal medical evidence also indicates that when plaintiff consistently takes his medications, he is psychiatrically stable. The ALJ discounted plaintiff's allegations of significant mental health symptoms and limitations because plaintiff's depression and anxiety were controlled with medications and his alleged memory loss is contrary to the objective medical evidence. These are compelling reasons, supported by substantial evidence, to reject plaintiff's testimony.

Third, the ALJ appropriately discounted plaintiff's testimony on the basis that he may have been exaggerating symptoms in order to gain access to benefits. The ALJ detailed that plaintiff was periodically homeless, received support from his mother, had a history of bankruptcy, and was being hounded by creditors. The ALJ's findings are supported by substantial evidence, are reasonable, and will not be disturbed. *Tomassetti*, 533 F.3d at 1040 (ALJ properly inferred that claimant was seeking benefits because financial reserve had run out).

Fourth, the ALJ appropriately discounted plaintiff's testimony based on his inconsistent statements about the reasons he was terminated from his last employment as a satellite installer. As the ALJ correctly indicated, plaintiff provided multiple inconsistent reports about how he lost his job: (1) that he lost his job because business slowed down, but his stepfather forgot to tell him that he had been laid off, and he was fired when he continued to report for work; (2) he lost his job due to neck and back pain; and (3) he was fired from his job at the time he was using methamphetamine. Tr. 45, 305, 884. The ALJ's determination that plaintiff offered inconsistent statements concerning his termination is supported by substantial evidence, and is another convincing reason to discredit his testimony. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002)(poor work history is an appropriate credibility factor to consider); *Tommasetti*, 533 F.3d

at 1039-40 (inconsistent statements about why claimant stopped working a valid adverse credibility consideration).    I conclude the above reasons, taken together, constitute specific, clear, and convincing reasons to discredit plaintiff's testimony.

Plaintiff argues that the ALJ selectively relies upon the evidence supporting nondisability, indicating that plaintiff does not realize he is paranoid and delusional, and that the ALJ overlooked evidence that plaintiff relies upon significant community support to meet his basic needs. Plaintiff correctly indicates that he appears to have support from various community providers who assist with housing and medications, and ensure that plaintiff reports to his probation officer.  However, plaintiff's efforts to explain away his lack of credibility is unavailing. Numerous examining providers found blatant inconsistencies in plaintiff's reporting of his physical and mental symptoms that are supported by substantial evidence.  I cannot conclude that the ALJ's interpretation of this evidence is unreasonable or irrational, even if I would conclude differently.  Therefore, the court must uphold the ALJ's findings.  *Molina*, 674 F.3d at 1111. This court may not substitute its judgment for that of the Commissioner.  *Edlund*, 253 F.3d at 1156.

Finally, in the decision, the ALJ also discounted plaintiff's credibility because his activities of daily living were inconsistent with his subjective limitations.  I conclude that this

18 - OPINION AND ORDER

reason is not supported by substantial evidence. For example, the ALJ discredited plaintiff noting that he was able to move furniture. This finding is not supported by the record. While the record does disclose that plaintiff frequently walks his dog, is able to do laundry, shop, prepare simple meals, and drive himself to appointments, these activities are not so extensive that they are inconsistent with his alleged capabilities. Additionally, the ALJ erred in discounting plaintiff's testimony based on drug-seeking behavior. While plaintiff has sought emergency room care, no emergency room provider has indicated that plaintiff was, in fact, drug seeking. Tr. 312, 315, 368, 379-88. Thus, this finding is not supported by substantial evidence. Accordingly, I conclude the ALJ erred in discounting plaintiff's testimony on these bases.

In sum, although the ALJ's credibility reasoning does contain two errors, the errors do not invalidate the overall adverse credibility finding. Because the ALJ's remaining reasons still amount to clear and convincing support and are backed by substantial evidence, the errors in the ALJ's credibility rationale are harmless. *See Carmickle*, 533 F.3d at 1162-63.

## II.   **Medical Evidence**

### A.   **Standards**

To reject the uncontroverted opinion of a treating or examining physician, the ALJ must present clear and convincing reasons. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons. *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1232 (9th Cir. 2011). When evaluating conflicting opinions, an ALJ is not required to accept an opinion that is not supported by clinical findings, or is brief or conclusory. *Id.*

Under the social security regulations governing the weight to be accorded to medical opinions, "acceptable medical sources" include licensed physicians and licensed psychologists, but not nurse practitioners. *See* 20 C.F.R. §§ 416.913(a), (d)(1). Nurse practitioners are deemed to be "other sources." *Id.* "Other" medical sources may not establish the existence of a medically determinable impairment, but, the information from other sources may provide insight into the severity of a claimant's impairments and ability to work, especially where the evidence is complete and detailed. 20 C.F.R. § 416.913(d); *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). An ALJ must provide a germane reason for rejecting the opinion from an "other source." *See, e.g., Bruce v. Astrue*, 557 F.3d 1113, 1115–16 (9th Cir. 2009)(explaining standard for lay witness testimony); *Turner v. Commissioner of Soc. Sec. Admin.*, 613 F.3d 1217, 1223–24 (9th Cir. 2010).

**B.   Ms. Gareau, PMHNP**

Plaintiff complains that the ALJ erred in failing to give controlling weight to the opinion of Marguerite Gareau, a

20 - OPINION AND ORDER

psychiatric mental health nurse practitioner (PMHNP).  Plaintiff argues that Ms. Gareau was plaintiff's primary mental health provider, treating him for over two years, and that Ms. Gareau's opinion could only be discounted for clear and convincing reasons.

Ms. Gareau was plaintiff's primary mental health provider at Sequoia Mental Health Services, Inc. (which plaintiff describes as a "community care" team) and treated plaintiff from approximately September 8, 2009 to April 12, 2012.  Tr. 622, 824.  In that role, Ms. Gareau met with plaintiff, prescribed mental health medications, and appears to have assisted with plaintiff's coordination of care among various social workers and probation officers.   In her treatment notes, Ms. Gareau consistently diagnosed delusional disorder, depressive disorder, and a rule out schizoaffective disorder.  Tr. 625.

As the ALJ accurately detailed in the decision, Ms. Gareau responded to questions provided by plaintiff's attorney for use in plaintiff's pursuit of social security benefits.  Tr. 738.  In the June 15, 2011 questionnaire, Ms. Gareau opined that plaintiff has schizoaffective disorder, bipolar type.   Tr. 738.  Ms. Gareau stated that plaintiff is aware of being depressed, but generally presents in a mixed state, with pressured speech, grandiosity, and anger.  Ms. Gareau stated that plaintiff has no insight into his illness, believing he has only depression and anxiety.  Ms. Gareau opined that plaintiff has great difficulty with concentration,

persistence and pace, difficulty with simple, routine tasks for eight hours, and would require special supervision due to his mental illness. Tr. 739. Ms. Gareau also opined that plaintiff's marijuana use was not responsible for his psychiatric symptoms. Tr. 740.

In the decision, the ALJ thoroughly discussed the medical evidence from various treatment providers, and assigned some weight Dr. Schneider's opinion, significant weight to Dr. Duvall's opinion, substantial weight to Dr. Scharf's opinion, and significant weight to the opinions of the state agency reviewing physician's opinions. Plaintiff does not challenge the ALJ's assessment of any of these opinions. Even if the ALJ were to treat Ms. Gareau as an acceptable medical source, because her opinions are contradicted, the ALJ was required only to provide specific and legitimate reasons to discount them.

The ALJ gave Ms. Gareau's June 15, 2011 opinion "little weight," providing several germane reasons. First, the ALJ discounted Ms. Gareau's June 2011 diagnosis of schizoaffective disorder because she is not an acceptable medical source, and under the regulations, her observations and opinion cannot establish an impairment. 20 C.F.R. § 416.913 (a), (d)(only acceptable medical sources may establish a medically determinable impairment, but "other sources" may provide evidence to show the severity of that impairment). The record does not show that Ms. Gareau worked under

a physician's close supervision. *Molina*, 674 F.3d at 1111.  Thus, contrary to plaintiff's suggestion, the ALJ accurately noted that Ms. Gareau's opinion could not establish the impairment of schizoaffective disorder.

Second, as the ALJ noted, no acceptable medical source has diagnosed plaintiff with schizoaffective disorder, and thus the ALJ found Ms. Gareau's opinion inconsistent with the other objective evidence in the record, and appropriately discounted her opinion on that basis. Tr. 305, 335, 389; *see also Molina*, 674 F.3d at 1111 (ALJ appropriately discounted physician assistant's opinion where it conflicted with psychiatrist's opinion); *Bayliss*, 427 F.3d at 1218 (inconsistency with objective medical evidence is a germane basis to for discounting a lay opinion).  To be sure, plaintiff does not challenge the ALJ's evaluation of the opinions of Drs. Schneider, Scharf, and Duvall, none of whom diagnosed schizoaffective disorder, but instead found plaintiff was exaggerating mental health symptoms.

Third, as the ALJ discussed, in Ms. Gareau's treatment notes, she lists schizoaffective disorder solely as a rule out diagnosis, indicating the diagnosis was not definitive.  The ALJ determined Ms. Gareau's June 15, 2011 opinion listing schizoaffective disorder as plaintiff's primary diagnosis is therefore inconsistent with her own treatment notes, and discounted it on that basis. *See Molina,* 674 F.3d at 1111-12 (recognizing that a conflict with treatment

notes is a germane reason to reject a treating physician's assistant's opinion).

The ALJ also gave little weight to an October 22, 2009 mental status report authored by Ms. Gareau. In that report, Ms. Gareau noted that plaintiff reported a history of depression, and that plaintiff presented with significant paranoid and grandiose delusions with significant homicidal and suicidal ideation. Tr. 396. Ms. Gareau opined that plaintiff has difficulties with social functioning, and has significant deficits in recall and memory and difficulty concentrating. Tr. 398. The ALJ discounted the October 2009 report for numerous reasons: (1) it was based on solely plaintiff's unreliable self-reports; (2) was inconsistent with other objective evidence in the record; (3) Ms. Gareau failed to consider substance abuse; and (4) Ms. Gareau is not an acceptable medical source. The ALJ's reasoning readily supplies multiple germane reasons, backed by substantial evidence, for discounting Ms. Gareau's October 2009 report. *Turner*, 613 F.3d at 1224.

In short, I conclude that the ALJ has provided multiple germane reasons, supported by substantial evidence, to discount Ms. Gareau's opinions. Alternatively, I also conclude that when these reasons are taken together, the ALJ has provided specific and legitimate reasons to discounting Ms. Gareau's opinions. The ALJ did not err.

////

24 - OPINION AND ORDER

**C. Valerie Cecil, FNP**

Plaintiff also complains that the ALJ erred in assigning little weight to the opinion of Valerie Cecil, Family Nurse Practitioner (FNP). On July 27, 2011, plaintiff appeared at Ms. Cecil's office with a support person and asked Ms. Cecil to complete necessary disability paperwork and return it to his attorney. Tr. 764, 741. In that opinion, Ms. Cecil diagnosed plaintiff with cervical spine stenosis, degenerative disk disease, scoliosis, depression, sleep apnea, and a history of renal cell carcinoma. Tr. 741. Ms. Cecil indicated that plaintiff's pain, as reported by plaintiff, is between four and eight on a 10-point scale daily. Additionally, with respect to plaintiff's physical functional limitations, Ms. Cecil noted that plaintiff assessed his own limitations as follows: he can occasionally lift 20 pounds, frequently lift five to 10 pounds; can stand or walk for less than two hours total in an eight hour day, with customary breaks, and could stand or walk for 15 minutes at a time before needing a break; he could sit for less than two total hours, and would need to change from sitting, standing, and walking every 20 minutes; he would need to rest every 45 to 60 minutes; and cannot maintain concentration, persistence, and pace at either light or sedentary exertion due to pain. Tr. 743-45. Ms. Cecil's opinion is contradicted by the state agency reviewing physicians.

In the decision, the ALJ gave little weight to Ms. Cecil's opinion because the physical limitations were admittedly based on plaintiff's self-reports, no objective testing was performed at the time of the assessment, and Ms. Cecil is not an acceptable medical source. Tr. 32. Having carefully reviewed the record, the ALJ's findings are wholly supported by substantial evidence in the record. As discussed above with respect to Ms. Gareau, the reasons cited by the ALJ are germane reasons, or alternatively, specific and legitimate reasons, sufficient to discount her opinion. The ALJ did not err.

## III. **Lay Testimony**

Lay witness testimony as to a claimant's symptoms or how an impairment affects his ability to work is competent evidence, which the ALJ must take into account. *See Bruce*, 557 F.3d at 1115; *Stout v. Commissioner, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006); *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). The ALJ is required to account for competent lay witness testimony, and if it is rejected, provide germane reasons for doing so. *Valentine*, 574 F.3d at 694.

### A.   **Dominique Eckard**

Plaintiff complains that the ALJ erred in failing to incorporate limitations described by his mother. On March 6, 2008, plaintiff's mother, Dominique Eckard, completed a Third Party Function report. Tr. 184. In that report, Ms. Eckard indicated

that she sees plaintiff once a month, and that plaintiff is able to take care of all the things he needs to get through a day, including walking his dog two to three times a day. Ms. Eckard reported that plaintiff needs reminders to groom and take medication, and that plaintiff eats prepared food that he warms in the microwave. Ms. Eckard indicated that plaintiff does his own laundry, chores, and goes to the store, but needs to rest afterward. Tr. 186. Ms. Eckard described that plaintiff was fired from his job at Dish Net because he missed more time than allowable, and does not handle stress. Ms. Eckard reported that plaintiff sometimes gets so depressed that he wants to die. Tr. 187. Ms. Eckard noted that plaintiff uses a walking cane and neck brace, uses hearing aids and wears glasses. Tr. 187.

The ALJ gave some weight to Ms. Eckard's testimony that plaintiff can perform his activities of daily living, such as walking his dog, laundry, household chores, and preparing simple meals because her report is consistent with plaintiff's hearing testimony. Tr. 29. However, the ALJ found Ms. Eckard's testimony about plaintiff's pain complaints to be based on plaintiff's subjective complaints and not supported by the objective evidence in the record. The ALJ's observations are sufficiently germane reasons for discounting Ms. Eckard's testimony. *See Bayliss*, 427 F.3d at 1218 (ALJ provided germane reasons for rejecting portions

of lay testimony that was inconsistent with claimant's activities and objective evidence).

B.   **Robin Addington**

On September 11, 2009, Robin Addington, a housing counselor at Open Door Counseling Center, Inc., completed a Third Party Function Report.   Tr. 218.   Ms. Addington reported that she sees plaintiff only periodically, when plaintiff comes to the homeless shelter two or three times per week.   Ms. Addington reported that plaintiff is homeless and sleeps in his car.   Ms. Addington stated that plaintiff reports that he walks his dog three times a day, and otherwise rests in his car and finds food.   Ms. Addington states that plaintiff uses a CPAP machine to help him breathe at night, and that sleeping in his car exacerbates his pain.   She explained that plaintiff does not have any trouble with personal care, can prepare his own meals and can do his own laundry.   Ms. Addington says that plaintiff is antisocial and prefers to be left alone, and described him as paranoid, distrustful and argumentative.   Tr. 223.

The ALJ gave some weight to Ms. Addington's descriptions of plaintiff's activities, such as his ability to prepare simple meals, take his dog for a walk, drive a car, and shop in stores because those limits were based on her observations at the homeless shelter and were consistent with other evidence in the record.   The ALJ discounted Ms. Addington's statements about plaintiff's pain because those limitations were likely based on plaintiff's

28 - OPINION AND ORDER

previously discounted subjective statements. The ALJ's partial rejection of Ms. Addington's testimony is supported by substantial evidence and was not error. *Bayliss*, 427 F.3d at 1218.

## V.    The ALJ did not Err in Assessing Plaintiff's RFC

The RFC is the most a claimant can do despite his limitations. 20 C.F.R. § 416.945(a). In assessing the RFC, the ALJ must consider limitations imposed by all of a claimant's impairments, even those that are not severe; the ALJ must also evaluate "all of the relevant medical and other evidence." *Id.*

An ALJ's RFC need only incorporate credible limitations supported by substantial evidence in the record and must be consistent with the restrictions identified in the medical testimony. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008); *see Bayliss*, 427 F.3d at 1217 (the ALJ is only required to identify specific, credible limitations in the RFC; "[p]reparing a function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record is unnecessary").

I have not identified any error by the ALJ in assessing plaintiff's credibility or evaluating the medical or lay testimony, and therefore conclude that the RFC included all credible limitations. Because this determination is reasonable in light of the entire record and is supported by substantial evidence, the ALJ's RFC and Step Five finding are affirmed. *See Osenbrock v.*

*Apfel,* 240 F.3d 1157, 1163-65 (9th Cir. 2001); *see also Burch* v. Barnhart, 400 F.3d 676, 680-81 (9th Cir. 2005)(the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation").

## CONCLUSION

For the reasons set forth above, the Commissioner's final decision denying benefits to plaintiff is AFFIRMED.  This action is DISMISSED.

IT IS SO ORDERED.

DATED this _21_ day of NOVEMBER, 2014.

Malcolm F. Marsh
United States District Judge